**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 20-cr-00237-RDB** |
| **v.** | * | |
| | * | |
| **JOSE HOPKINS** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| | ************ | |

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Motion for Temporary Release from Custody (the "Motion") (ECF No. 28); the government's Response in Opposition to Defendant's Motion for Temporary Pretrial Release (the "Response") (ECF No. 35); and the defendant's Reply in Support of Motion for Temporary Release from Custody (the "Reply") (ECF No. 37). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6, 207. For the reasons stated below, the Motion is **DENIED**.

## I. PROCEDURAL HISTORY

On August 3, 2020, a federal grand jury returned an indictment charging the defendant with Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1). The defendant appeared for his initial appearance on August 19, 2020. On August 28, 2020, the defendant appeared before this Court for a detention hearing.

## II. BAIL REFORM ACT

Pretrial detention and release are governed by the Bail Reform Act ("BRA"). 18 U.S.C. §§ 3141 *et seq.* The BRA requires the Court to order the pretrial release of the person "subject to

the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B).  If, however, the Court finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).  "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *Id.* § 3142(f).  On the other hand, where risk of flight is the basis of a detention order, the government must prove by a preponderance of the evidence that no combination of conditions of release will reasonably assure the defendant's presence at future court proceedings.  *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including –

(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III.  DETENTION HEARING

After hearing from the parties at the detention hearing, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g) and found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  The Court also found by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required.  Therefore, the Court ordered that the defendant be detained pending trial.  *See* Order of Detention Pending Trial (ECF No 12).  The defendant is currently detained at the Chesapeake Detention Facility ("CDF") in Baltimore.

## IV.  TEMPORARY RELEASE UNDER § 3142(i)

The defendant urges the Court to order his temporary release.  Indeed, under 18 U.S.C. § 3142(i), the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[1]

Regarding whether the defendant has established "another compelling reason" for temporary release, the Fourth Circuit has directed the Court to

> consider in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk,

---

[1] The defendant has not argued that release, temporary or otherwise, is necessary for the preparation of his defense.

balanced against the other Bail Reform Act factors, rises to the level of a
"compelling reason" for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251, Order at 1 (4th Cir. Apr. 15, 2020).

The first factor to consider is the severity of the risk that the COVID-19 virus poses to the

defendant given his existing medical conditions.  The defendant argues that his asthma and

history of smoking are factors that put him at risk of severe illness if he contracts COVID-19.

Motion (ECF No. 28 at 1, 3-4); Reply (ECF No. 37 at 2-3).  He acknowledges that he has not

tested positive for COVID-19.  He does not assert that he has not received appropriate treatment

for his asthma or the effects of his history of smoking.  In fact, the defendant acknowledges that

he "has continued to receive asthma medications throughout his detention at CDF."  Motion

(ECF No. 28 at 4).  He argues, however, that he should be released because CDF has not taken

appropriate action to protect him from exposure to the COVID-19 virus, thus putting him at an

increased risk of severe illness if he contracts the virus.  Motion (ECF No. 28 at 5-6).

According to the Centers for Disease Control and Prevention (the "CDC"), adults who

are current or former cigarette smokers "**are at increased risk** of severe illness from the virus

that causes COVID-19," and adults with moderate to severe asthma "**might be at an increased**

**risk** for severe illness from the virus that causes COVID-19."  *Certain Medical Conditions and*

*Risk for Severe COVID-19 Illness*, Ctrs. for Disease Control & Prevention (Mar. 15, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html/.[2]

---

[2] Asthma is considered "moderate persistent" if without treatment any of the following are true:
(1) symptoms occur daily (inhaled short-acting asthma medication is used every day);
(2) symptoms interfered with daily activities; (3) nighttime symptoms occur more than 1 time a
week, but do not happen every day; or (4) lung function tests are normal (more than 60% to less
than 80% of the expected value), and PEF (peak expiratory flow) varies more than 30% from
morning to afternoon.  *Classification of Asthma*, Univ. of Mich. | Mich. Med. (Oct. 26, 2020),

The defendant's history of smoking and asthma is documented throughout the medical records obtained from CDF.  Regarding his history of smoking, the defendant submits that his history of smoking "dates back years."  Reply (ECF No. 37 at 3).  The medical records reflect that the defendant reported that he smokes one pack of cigarettes per day and that his cumulative exposure was described as "0 pack years."  R. at 113.[3]  His asthma has been described in the medical records as "Asthma, Stable" (R. at 116), "Asthma" (R. at 111), "Asthma NOS" (R. at 101), "Asthma NOS w/o status asthmaticus" (R. at 37, 64, 67),[4] and "stable intermittent asthma" (R. at 49).  As the defendant acknowledges, he has received asthma medication on a regular basis.  During his initial physical exam at CDF on August 20, 2020, the defendant reported that his last asthma attack was two days before and that he uses Albuterol.  R. at 113.  The medical records do not show, however, that he suffered an asthma attack while at CDF.

Notwithstanding his history of smoking and asthma, the medical records do not show any significant issues with his respiratory system.  Upon examination, his respiratory system was described as "[n]o cough, no audible wheeze, respirations are regular" (R. at 114) and "[n]ormal

---

https://www.uofmhealth.org/health-library/hw161158.  Asthma is considered "severe persistent" if without any treatment any of the following are true: (1) symptoms occur throughout each day or severely limit daily physical activities; (2) nighttime symptoms occur often, sometimes every night; (3) lung function tests are abnormal (60% or less of expected value), and PEF varies more than 30% from morning to afternoon.  *Id.*

[3] "R." refers to the defendant's medical records provided by CDF.  A "pack year" is "[a] way to measure the amount a person has smoked over a long period of time.  It is calculated by multiplying the number of packs of cigarettes smoked per day by the number of years the person has smoked."  *Definition of pack year – NCI Dictionary of Cancer Terms*, Nat'l Cancer Inst. at Nat'l Insts. of Health, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/pack-year (last visited Mar. 26, 2021).  "For example, 1 pack year is equal to smoking 1 pack per day for 1 year, or 2 packs per day for half a year, and so on."  *Id.*

[4] "Status asthmaticus" "refers to an asthma attack that doesn't improve with traditional treatments, such as inhaled bronchodilators."  *Status Asthmaticus: Symptoms, Causes, Diagnosis, and Treatment* (Mar. 17, 2020), https://www.healthline.com/health/status-asthmaticus.

to inspection.  Lungs clear to auscultation and percussion" (R. at 116).  On November 17, 2020, the defendant was seen for unspecified respiratory issues.  He indicated that "his symptoms are exercise induces [sic] occasionally but are relieved by when he uses his albuterol MDI.  Denies any cough, fever or chills."  R. at 71.  Upon examination, his respiratory system was noted as "[n]ormal to inspection.  Lungs clear to auscultation and percussion."  R. at 71.

Without more information, it is difficult for the Court to categorize the defendant's asthma as moderate to severe.  However, giving the defendant the benefit of the doubt, the Court will find that because of his asthma the defendant might be at an increased risk for severe illness from the virus that causes COVID-19 under CDC guidelines.  Further, the Court finds that the defendant is a current or former cigarette smoker and thus falls within the CDC guidelines as someone who is at an increased risk of severe illness from COVID-19.  The Court notes, however, that the medical records from CDF do not reflect that the defendant's respiratory system has been compromised by his history of smoking or asthma.

The risk that the COVID-19 virus poses to the defendant must now be evaluated in the context of the current COVID-19 situation at CDF.  The defendant asserts that CDF "is experiencing a widespread and uncontrolled outbreak of COVID-19."  Motion (ECF No. 28 at 1).  In support of his argument, the defendant points the Court's attention to statistics from the Maryland Department of Public Safety & Correctional Services ("DPSCS") showing that as of March 16, 2021, there were 183 positive detainees and 82 positive staff members at CDF.  Motion (ECF No. 28 at 3) (citing DPSCS COVID-19 Dashboard Slide 2 of 5, https://dpscs.maryland.gov/covid-19/).  The defendant further represents that one detainee died because of COVID-19.  These statistics show the total number of cases at CDF since March 2020, but they do not reflect the number of staff and detainees who have recovered during that

time.  The Court's review of the DPSCS Dashboard Slide 2 of 5 shows that since March 2020 there were 84 staff COVID-19 cases, with 82 recoveries.  Regarding detainees, since March 2020 there were 185 inmates COVID-19 cases, with 182 recoveries.  The most relevant information to the Court is reflected on Slide 1 of 5 of the DPSCS Dashboard.  Slide 1 of 5 reports that currently there are only four active COVID-19 cases at CDF, two staff members and two inmates.  Neither slide reflects any deaths at CDF.

The defendant argues for temporary release because although "the reported number of active COVID-19 cases is currently low, the Court cannot trust that CDF will not again become the site of an outbreak that leaves hundreds ill and claims lives."  Reply (ECF No. 37 at 4) (footnote omitted).  In support of this argument, the defendant cites the allegations of several of the plaintiff detainees in the recently filed case of *Catchings v. Wilson*, No. 1:21-cv-00428-TSE (D. Md. filed Feb. 20, 2021).  In *Catchings*, a group of CDF detainees filed a class action by which they request the Court to order the authorities at CDF, *inter alia*, to implement measures to protect them from contracting the virus and curtailing its spread within the facility.  This Court declines the invitation to speculate on the ability of CDF to protect it staff and detainees from exposure to COVID-19 in the future, particularly in light of the fact that the Court in *Catchings* has not yet addressed the merits of the plaintiffs' allegations in that case.  This Court again notes that the defendant has not contracted the virus.  He was quarantined upon his arrival at CDF before joining the general population (R. at 113) and in February 2021 following his exposure to COVID-19.  He completed the quarantine period, and no symptoms were reported.  He then rejoined the general population.  R. at 37.  He has not alleged that he has suffered from any COVID-19 symptoms or has not received appropriate medical care when required.

Finally, under the Fourth Circuit's directive in *Creek*, the Court must address whether the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at CDF, balanced against the other BRA factors, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).  The defendant has the burden to show that circumstances warranting temporary release under § 3142(i) exist.  *United States v. Sanders*, 450 F. Supp. 3d 1123, 1127 (D. Kan. 2020).

After hearing from the parties at the detention hearing, the Court reviewed the § 3142(g) factors.  Regarding the nature and circumstances of the offense charged, the defendant is charged with an offense involving a firearm.  *See* 18 U.S.C. § 3142(g)(1).  Regarding the weight of the evidence against the defendant, the Court found that the weight of the evidence against the defendant was strong.  The government proffered the following facts.  At approximately 11:50 p.m. on November 25, 2019, officers of the Baltimore Police Department were monitoring CCTV cameras in a high drug-trafficking area of Baltimore.  They observed the defendant engage in what appeared to be two hand-to-hand drug transactions.  Officers responded to the scene and approached the defendant.  The defendant attempted to flee but was quickly apprehended.  The defendant was searched, and the officers found $104 in cash and a loaded firearm on his person.  At the time, the defendant was prohibited from possessing a firearm because of prior convictions.  *See id.* § 3142(g)(2).

Regarding the history and characteristics of the defendant, the Court reviewed the Pretrial Services report that summarized the defendant's residential history and family ties, his employment history and financial resources, his health, and his criminal record.  The defendant is a 36-year-old, lifelong resident of Baltimore who resides with his fiancée.  The defendant does not possess a passport and has never traveled outside of the United States.  He suffers from

asthma and uses an inhaler.  The Pretrial Services report noted four aliases, four dates of birth and four social security numbers associated with the defendant.

The defendant's criminal record is noteworthy.  The defendant has been convicted of three felony CDS offenses and five misdemeanor CDS offenses.  Significantly, in 2007 he was convicted in this Court of being a felon in possession of a firearm.  He was sentenced to 110 months' incarceration, followed by three years of supervised release.  In 2016 and 2017 he was found guilty of violation of supervised release.  The second violation resulted in a revocation of supervised release and a sentence of three months' incarceration.  He committed the federal felon-in-possession offense while he was on probation for two of the felony CDS offenses.  In March 2019 he was arrested and charged with firearms offenses.  Those charges were dismissed in April 2019, just seven months before the instant offense.  He has been found in violation of probation in State court.  Warrants for his failure to appear have been issued on three occasions. *See id.* § 3142(g)(3).

Finally, regarding the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the Court found that the defendant would pose a serious danger to the community if released.  The defendant has a propensity to possess firearms when he is not authorized to do so.  If he is convicted of the present offense, it will be his second conviction in this Court of being a felon in possession of a firearm.  As noted earlier, he was twice found in violation of supervised release in the prior federal case.  He has been found in violation of probation in connection with a CDS conviction.  The present offense allegedly occurred just seven months after the dismissal of six firearms-related charges.  He has been convicted of eight CDS offenses, including three felonies.  In light of the strong evidence against the defendant in the present case, it does not appear that prior periods of incarceration

9

and court supervision have deterred the defendant from engaging in criminal conduct. For these reasons, the Court found that the defendant poses a serious danger to the community if released. *See id.* § 3142(g)(4).

Based on these findings, the Court found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community and by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required. The Court thus ordered that the defendant be detained pending trial.

The defendant argues that the BRA factors do not outweigh the danger that COVID-19 presents to the defendant for several reasons. First, the defendant asserts that, even if he is convicted at trial and unsuccessful in disputing certain guidelines enhancements, his guidelines would only be 30 to 37 months of incarceration. Reply (ECF No. 37 at 4). At the detention hearing, the government suggested that the defendant might be eligible for sentencing under the Armed Career Criminal Act (18 U.S.C. § 924(e)), which would subject him to a mandatory minimum sentence of 15 years' incarceration. Arguably, being subject to a lighter sentence may reduce the defendant's risk of flight; however, it does not reduce the nature of the danger he poses to the community if released. Second, the defendant asserts that discovery thus far reveals that there are substantial issues with the government's case that could lead to the suppression of evidence or the dismissal of the charges against the defendant. Reply (ECF No. 37 at 1, 4). It would be improper for this Court at this time to speculate on the strength of the government's case or the admissibility of its evidence. The defendant may revisit the issue of pre-trial release when pre-trial motions are litigated. Finally, the defendant argues that he complied with conditions of release imposed on him by the State court before he was arrested on the present

federal charge, implying that he could be trusted to comply with conditions of release imposed by this Court.  Reply (ECF No. 37 at 1-2).  As discussed previously, the defendant was convicted in this Court of the same offense in 2007.  After serving a sentence of 110 months, he was placed on supervised release.  He twice violated supervised release resulting in a revocation of supervised release and the imposition of a term of incarceration of three months.  He committed that federal offense while he was on probation for two felony CDS offenses.  The instant offense occurred just seven months after the dismissal of several State firearms offenses.  The defendant's history of violations of the law and disregard for conditions of supervision gives the Court little confidence that he will comply with conditions of release now.

In conclusion, when balanced against the BRA factors, the Court is not persuaded that the risk that the COVID-19 virus poses to the defendant, given his existing medical condition and current COVID-19 situation at CDF, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

## **<u>ORDER</u>**

Accordingly, it is this 26th day of March 2021, hereby **ORDERED** that the defendant's Motion for Temporary Release from Custody (the "Motion") (ECF No. 28) is **DENIED**.

_____/s/_____
Thomas M. DiGirolamo
United States Magistrate Judge